Law Offices
**M. Van Smith**
**1696 Mendenhall Drive**
**San Jose, California 95130**
**Telephone (408) 364-1062**
**FACSIMILE 408-273-6496**

March 28, 2008

Hon. Joseph C. Spero
United States Magistrate Judge
San Francisco, California 94102

      Re:    King v. AT&T Operations, Inc., NO. 07-02600 JCS
             Joint Discovery Letter

Dear Judge Spero:

      This is a joint letter submitted by Della King ("Plaintiff") and defendant AT&T Operations, Inc. ("Defendant") regarding discovery issues. The disputes concern responses to interrogatories and requests for documents propounded by plaintiff and request for documents propounded by defendant. A dispute also concerns plaintiff's continued deposition.

A. <u>PLAINTIFF'S INTERROGATORIES</u>

INTERROGATORY NO. 1:
      *How many employees were involuntarily terminated from with AT&T in the last five years.*

DEFENDANT'S RESPONSE TO INTERROGATORY NO. 1
      Defendant objects to this request on the following grounds:
      1. It is overbroad an seeks information neither relevant to t he subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.
      2. The interrogatory is vague, ambiguous and uncertain as to t he use of the terms "AT&T," "involuntarily terminated" and "from with."
      3. The interrogatory is overly burdensome and oppressive.
      4. Defendant objects to the extent the interrogatory seeks information protected by the third party's right to privacy.
      Without waiving the foregoing objections, and subject to them, defendant responds as follows:
      In addition to Plaintiff one other employee in the LD Data product development Department of AT&T Operations, Inc. received a 30-day surplus notification letter during the relevant reduction-in-force and thereafter was separated form the company ("the other separated employee").

INTERROGATORY NO. 2:

*What was the ages of the employees who AT&T [involuntarily][1] terminated from employment in the last five years? (Plaintiff agrees to keep the identity of the employees confidential.)*

DEFENDANT'S RESPONSE TO INTERROGATORY NO. 2:
Defendant objects to this request on the following grounds:
1. It is overbroad and seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.
2. The interrogatory is vague, ambiguous and uncertain as to the terms "terminated," "AT&T" and "confidential."
3. The interrogatory seeks information protected by a third party's right to privacy.
4. The interrogatory is overly burdensome and oppressive.
Without waiving the foregoing objections, and subject to them, defendant further responds as follows:
The other separated employee was over the age of 40.

INTERROGATORY NO. 3:

*What was the reason or reasons why each employee who was **[involuntarily]** terminated from employment in the last five years?*

DEFENDANT'S RESPONSE TO INTERROGATORY NO. 3:
1. It is overbroad and seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.
2. The interrogatory seeks information protected by a third party's right to privacy.
3. The interrogatory is vague, ambiguous and uncertain as to the term "terminated."
4. The interrogatory is overly burdensome and oppressive.
Without waiving the foregoing objections and subject to them, defendant further responds as follows:
Plaintiff and the other separated employee received a 30-day surplus notification letter because of a reduction-in-force.

Plaintiff's Position

The above three interrogatories sought to discover the number and the reasons why

---

[1] All underlined text herein was added by plaintiff after she received defendant's positions in response to plaintiff's first draft of this joint letter

employees were involuntarily terminated. (It was understood that the interrogatories pertained only to involuntary terminations.) This information can show a pattern of discrimination. "Intentional discriminatory treatment may also be demonstrated in the aggregate. * * * According to the underlying theory, articulated in *International Brotherhood of Teamsters v. United States* [ 431 U.S. 324, 339, 97 S.Ct. 1843, 1856] an employer that does not routinely discriminate should over time achieve within its employees an incidence of protected group representation not significantly less than the group's representation in an available pool of qualified applicants." See H. Lewis, CIVIL RIGHTS AND EMPLOYMENT DISCRIMINATION LAW(1997) §4.7 p. 253.

Plaintiff believes that the evidence will show that there is a disproportionate number of persons who were in protected categories of age and disability (who had taken medical leave) were involuntarily terminated from employment.

This information is most likely required to be compiled by the EEOC. See E. Hollander, EMPLOYMENT EVIDENCE (2003) §5:60. Defendant has not stated that in any response that the information has not been compiled electronically for the EEOC. Nor has Defendant stated what the burden of obtaining the information. The court should disregard any claim of undue burden without facts to support the claimed burden.

Defendant's position is to confine the data to the group of around 10 to 15 employees in which worked as the only source from which terminations were relevant, relying on *Aramburu v. The Boeing* Co. (10th Cir. 1997) 112 F.3d 1398, 1404. In *Aramburu* the employee sought to prove discrimination by showing that there had been a pattern and practice of treatment based on ancestry. The court stated, "To assert a claim of disparate treatment, the plaintiff must show that he was treated differently than other similarly situated employees who violated work rules of comparable seriousness. * * * Similarly situated employee are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *Id.* 1404. This case did not deal with statistical information, but only a pattern and practice of disparate treatment that the employee testified to based on his observation.

The issue is what is the relevant group to compare statistics. Plaintiff contends that AT&T had a general policy of terminating employees who had medical problems and this was a reason why Plaintiff was treated adversely. This adverse treatment arose several months before there was a reduction in force. Plaintiff was given an adverse employment rating because when she was unable to work because of medical condition. The low employment rating Plaintiff received was a pretext to include Plaintiff in the reduction in force rather than allow her to transfer to another department. If the initial discrimination was because her age and medical condition, then the group in which she was employed would be insignificant. For example, in *Los Angeles Department of Water & Power v. Manhart* (1978) 435 U..S. 702, a policy of requiring greater pension contributions from females was discriminatory.

If the group from which involuntarily terminated employees is limited to the group or 10 or 15 employees in the group in which she was employed, that would be tantamount to precluding

statistical evidence. The group has to be sufficiently large for the statistical comparison to be probative. A group of 10 to 20 employees would not be significant. *Palmer v. United States* (9th Cir. 1986) 794 F.2d 534, 539; *Rose v. Wells Fargo & Co.* (9th Cir. 1990) 902 F.2d 1417, 1423. In *Mayor v. Education Equality League* (1974) 415 U.S. 605, 611, the United States Supreme Court found no significance of statistics based on a group of 13 because it was too small to provide a sample.

On February 14, 2008, the Defendant's attorney sent a letter stating that he had said at the January 19 meeting that he would have to consult with the department about its structure.

Plaintiff contends that this was no more than a stall. It should not have taken almost a month to confer about structure, whatever that is supposed to mean. Plaintiff contends that there has been a deliberate delay and refusal to provide discovery from the outset despite the June 2008 discovery deadline urged by AT&T.

Defendant's Position

Defendant objects to plaintiff's erroneous statements regarding defendant's positions and misrepresentations regarding statements made at the parties' face-to-face meet and confer on January 19, 2008. Defendant further objects to this interrogatory as unilaterally revised by plaintiff after the parties' meet and confer sessions.[2]

Defendant also objects to plaintiff's addition of arguments newly inserted after defendant's original draft positions to plaintiff's positions.

Despite objections raised, defendant originally responded to Interrogatory Nos. 1-3 with valid responses. Otherwise, the interrogatories as drafted are overbroad and vague. Plaintiff failed to meet and confer in good faith by not addressing defendant's valid objections.

In general, to assert a claim of disparate treatment, an employee must show that he or she was treated differently than other similarly situated employees. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluations and discipline." Aramburu v. The Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997).

Plaintiff worked in the LD Data Product Development Department of AT&T Operations, Inc. She was laid-off during a reduction in force resulting in the elimination of two positions including plaintiff's position. The relevant pool of employees is that which was subject to the reduction.

---

2 The underlined words were inserted after defendant responded to plaintiff's assertion in the original draft of the joint letter. The alteration on the original interrogatories after plaintiff received defendant's position to her positions as stated in her original draft of this joint letter, including substantial revisions to plaintiff's original "Position" regarding the subject disputes, has caused significant delays in submitting the letter to the court.

Plaintiff's reliance on Los Angeles Department of Water & Power v. Manhart (1978) 435 U.S. 702, to support her argument regarding the relevant employment group is misplaced. The holding in Manhart turned on an analysis of whether higher pension contributions for female employees versus male employees violated Title VII on its face. (Id. at 711.) Nowhere in the court's opinion is there any discussion of statistical evidence, let alone what a proper pool of employees should be.

Similarly, plaintiff's reliance on Palmer v. United States, 794 F.2d, 534 (9th Cir. 1986) and Rose v. Wells Fargo & Co., 902 F.2d 1417 (9th Cir. 1990) do not support her argument concerning statistical sample size. In Palmer, the plaintiff produced two statistical studies, one from his own Forest Service station in Riverside, California and one from a Forest Service station in Redding, California. (Palmer v. United States, supra, at 539.) The Court of Appeal found the Redding station study to be irrelevant to a consideration of reduction of force action taken at the Riverside station, and that the Riverside statistics were inaccurate. (Id.) The Court noted that the plaintiff's sample size was small but did not find that the pool considered was wrong. (Id.) Palmer clearly supports defendant's position that the relevant pool of employees was that subject to the restrictions in force.

In Rose v. Wells Fargo & Co., there is no discussion of the appropriate size of any statistical pool underlying a discrimination claim, only that the proffered percentage of employees of different ages was insufficient to create a triable issue of fact regarding discriminatory intent. (Id. at 1423.) As such, it does not support plaintiff's position regarding any proper employee comparison pool for discovery purposes.

Finally, plaintiff's erroneously relies on Mayor of City of Philadelphia v. Educational Equality League (1974) 415 U.S. 605. The court, in analyzing proposed statistics concerning nine appointed mayoral positions on a thirteen member board, in fact rejected a large statistical analysis of the population at large and determined the relevant statistical universe to be top officials of a limited number of organizations. (Id. at 620.) The court noted that the sample size was small, but ruled that the sample's percentage results regarding race were given too much credence by the appellate court, not that sample size was incorrect. (Id.)

Therefore, plaintiff's attempts to expand the relevant pool here is meritless.

INTERROGATORY NO. 8:
*Of the employees of AT&T who were terminated in the last five years, how many of the employees had medical conditions for which they took more than two weeks off work?*

DEFENDANT'S RESPONSE TO INTERROGATORY NO. 8:
Defendant objects to this request on the following grounds:
1. It is overbroad and seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

Judge Joseph C. Spero
March 28, 2008
Page 6


      2. The interrogatory is vague, ambiguous and uncertain as to the term "medical conditions" and "took more than two weeks off work."
      3. The interrogatory seeks information protected by the third party's right to privacy.
      4. It is overly burdensome and oppressive.
      5. The interrogatory calls for speculation.

Plaintiff's Position

      Plaintiff had a medical condition which required her to miss work. (She life-threatening anemia.) <u>Plaintiff contends that she was given an adverse employment rating because she could not work because she had anemia and her manager gave her an adverse employment rating because of this. Refer to the statement below for additional comment.</u>

Defendant's Position

      Plaintiff's interrogatory is so vague and overbroad, it is impossible for defendant to proffer a response. It would require defendant to search through thousands of employees' attendance files and to include those who may have been absent for a simple cold. The information sought by plaintiff is simply irrelevant to her case.

      Plaintiff's attempt to narrow the scope is meaningless. First, FMLA is not an issue in this case. Second, plaintiff's purported limitation to "disability" does nothing to narrow this scope. The request remains overbroad and vague. Defendant offered to further respond to plaintiff's request if narrowed to the other employee laid-off and whether she took 10 consecutive work days off due to alleged illness of which defendant had knowledge, within one year prior to her lay-off.

INTERROGATORY NO. 5:
    *What is the substance of each conversation between Steven Grimm and Stephen Ellis about Plaintiff?*

DEFENDANT'S RESPONSE TO INTERROGATORY NO. 5:
    Defendant objects to this request on the following grounds:
      1. It is overbroad and seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.
      2. The interrogatory is vague, ambiguous and uncertain as to time and regarding the use of the term "substance."
      3. To the extent the interrogatory seeks information protected by the third party's right to privacy.
      4. The interrogatory assumes facts not yet established.

Judge Joseph C. Spero
March 28, 2008
Page 7

Plaintiff's Position

    Steven Grimm and Stephen Ellis were the managers of Plaintiff. They decided that she would be considered a surplus employee. This meant that if Plaintiff was not able to find employment in a department other than the one in which it was decided that she was a surplus employee, her employment with AT&T would be terminated.

    Grimm and Ellis were angry at Plaintiff for having filed a complaint with the California Department of Labor for withholding her wages because she had been overpaid when she was on disability leave.

    Plaintiff had been employed by the company for 26 years, starting out as a telephone operator and being promoted to middle management. After she had been given the letter stating that she was to be considered surplus (another employee was brought into the department to take her place), Plaintiff was able to interview and favorable impress the manager of another department to hire her. However, when Ellis learned of this, he contacted the manger of the department and told that manager that Plaintiff had performance problems. The offer from that manger was withdrawn the following day.

    Grimm and Ellis participated in the decision to classify Plaintiff as a surplus employee. The interrogatory seeks to discover the substance of conversations they had about Plaintiff.

Defendant's Position

    Defendant submits that the purported disputes regarding Interrogatory Nos. 5 and 6, are moot. Defendant offered to provide further responses to Interrogatory Nos. 5 and 6, with the narrowing of the scope provided by plaintiff in her original draft of the joint letter. Plaintiff rejected this offer and unilaterally submits the matter to the Court as a dispute.

INTERROGATORY NO. 6:
    *What is the substance of each conversation between Stephen Ellis and Carolyn Goinveaux about Plaintiff?*

DEFENDANT'S RESPONSE TO INTERROGATORY NO. 6:
    Defendant objects to this request on the following grounds:
    1. It is overbroad and seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.
    2. The interrogatory is vague, ambiguous and uncertain as to time and regarding the use of the term "substance."
        3. The interrogatory seeks information protected by the third party's right to privacy.
        4. The interrogatory assumes facts not yet established.

Judge Joseph C. Spero
March 28, 2008
Page 8

Plaintiff's Position

    Carolyn Goinveaux was the manager who had decided to employ Plaintiff in her department until Ellis contacted her and persuaded Goinveaux not to hire Plaintiff. Defendant stated the position is that the interrogatory is too broad and that the conversations should be limited to October 2005. Plaintiff's position is that the date is irrelevant. What Ellis said to cause Goinveaux to cause her withdraws the offer of employment in her department is what Plaintiff sought to discover and Defendant has evaded providing that information.

Defendant's Position

    See defendant's position regarding Interrogatory No. 5, above.

### B.    PLAINTIFF'S REQUEST FOR DOCUMENTS

REQUEST NO. 1:
    *Each writing referring to Plaintiff.*

DEFENDANT'S RESPONSE TO REQUEST FOR PRODUCTION NO. 1:
    Defendant objects to this request on the following grounds:
    1. It is overbroad and seeks information neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.
    2. It is vague and ambiguous and uncertain as a whole and specifically as to the term "writing"
    3. It is overly burdensome and oppressive.
    4. To the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.
    Without waiving the foregoing objections, defendant will comply with this request by producing plaintiff's personnel file.

Plaintiff's Position

    Defendant produced performance evaluations and routine personnel file documents. But no e-mails, notes or other writings referring to the issues in the case have been provided. <u>It is very likely that there were communications between the managers who were involved in the adverse performance rating of Plaintiff, the reaction for her complaint for the wage violation, and her being put on the surplus list of employees.</u> Plaintiff has repeatedly requested this information but it has not been provided. <u>The response is an evasion.</u>

Defendant's Position

    Notwithstanding its objections, defendant produced plaintiff's personnel <u>files</u>. During the face-to-face meet and confer, defendant also offered to further respond by providing

non-privileged emails and notes regarding plaintiff's lay-off and search for another position in September or October 2005, if any. Plaintiff continued to maintain defendant's response as a dispute and injected further argument as seen above. In light of plaintiff's new and further narrowing of this request, defendant will agree to provide a further response to this request with non-privileged emails and notes referring to plaintiff's 2004 performance evaluation, the disputed wage deductions in 2005 and her surplus letter, if any.

REQUEST NO. 2:
    Each writing referring to the employees needed after the company combined with AT&T.

Plaintiff's Position
    Ostensibly the reason for management deciding that Plaintiff was a surplus employee. However, the evidence will show that there was a continuing need for the services performed by Plaintiff. This evidence would show pretext. <u>Another employee was brought into the department in which had been working to do the work that Plaintiff had been doing.</u>

Defendant's Position

    The original request was vague and ambiguous and, especially with regard to the terms "employees needed" and "after the company combined with AT&T." Originally written, defendant is unaware of the existence of a document responsive to this request.

    Plaintiff has completely revised this request with her newly inserted argument creating a entirely new request which remains vague and ambiguous. Further, plaintiff has not met and conferred on this new issue. Defendant objects to plaintiff's tactics making the entire meet and confer process a waste of time. Plaintiff should be required to withdraw Request No. 2 and serve a new request.

<u>DEFENDANT'S DISCOVERY ISSUES</u>

Document Requests:

    3. All documents that constitute, evidence, relate or refer to any application for benefits claim and/or any proceeding (other than this action), whether administrative or legal, filed or commenced, or caused to be filed or commenced, by you in connection with your employment including, but not limited to, any complaint filed with the California Department of Fair Employment and Housing ("DFEH"), the U.S. Equal Employment Opportunity Commission ("EEOC"), the California Department of Labor Standards Enforcement ("DLSE") and/or any claim for unemployment benefits and/or worker's compensation benefits.

    7. All documents that constitute, evidence, support, relate to or refer to communication between you and any other persons or entities including employees or former employees of defendants regarding the allegations in the Complaint;

9. All documents that constitute, evidence, support, relate to or refer to your contention that Defendant acted illegally in making offsets from ;your wages, as alleged in paragraph 9 in the Complaint.

20. All documents that constitute, evidence, support, relate to or relate to your contention that Stephen Ellis gave you a Surplus Notification letter stating that the position of Della King with the Company had been eliminated.

34. All documents that constitute, evidence, support, relate to or refer to your contention that you are disabled including, but not limited to medical reports, diagnosis, correspondence, memoranda, prescriptions, invoices and billing.

35. All documents that constitute, evidence, support, relate to or refer to your contention that you suffered emotional distress.

Defendant's Position

During her deposition, the Plaintiff referred to documents in her possession which were responsive to the above requests but never produced. The documents referenced by Plaintiff included the following:

--copies of e-mails by the plaintiff to AT&T regarding her August, 2005 paycheck.

-- copy of the original complaint to the Department of Labor standards Enforcement, filed in July, 2005, along with any attachments.

--a copy of the September 21, 2005 surplus notification letter received by plaintiff signed by Steven Grimm, along with enclosures.

--a copy of records from plaintiff's therapist.

In fact plaintiff's counsel was in possession of the requested documents, but refused to provide them to defendant despite repeated requests. Although plaintiff agreed to produce these documents "later," they have not been produced.

Plaintiff failed to comply with discovery requests. Her conduct constitutes clear bad faith. Plaintiff's counsel's gamesmanship resulted in plaintiff's deposition not being completed.

Defendant requested that plaintiff's deposition be continued to afford defendant the opportunity to conduct follow-up questions relating to among other things, documents plaintiff failed to produce. The plaintiff's counsel refused to continue plaintiff's deposition.

Plaintiff's Position

Plaintiff agreed to produce the medical documents upon Defendant's agreeing to a confidentiality agreement. Defendant never agreed to a confidentiality order.

The document demand was lengthy and so general in many categories that it did not identify many documents that came up during the deposition. The documents that came up during the deposition were produced after the deposition.

An unsigned surplus letter was not produced on the day of the deposition. A signed copy of the letter was provided. (One has to question why the surplus letter had not been provided in response to Plaintiff's demand.)

The documents relating to the medical condition of Plaintiff were not produced because Defendant would not agree to a confidentiality agreement or order. That was stated as an objection in the response to the document demand. Plaintiff's counsel advised counsel of that during the deposition. There was not attempt to agree to a confidentiality order.

The deposition was not finished because for half of the morning Defendant's counsel insisted on examining on trivial matters despite being warned that the deposition would have to be concluded in eight hours. This seemed to stimulate counsel to take even longer on trivialities. It appeared that Defendant's counsel was looking for an excuse not to complete the deposition. That was the "gamesmanship."

Plaintiff agrees that if further questions are necessary about documents provided, those can be on written interrogatories rather than Plaintiff having to spend another day.

Respectfully submitted,

M. VAN SMITH
Attorney for Plaintiff

DENNIS W. HAYASHI
Attorney for Defendant